*1113 OPINION
By the Court,
Shearing, J.:
In May 1984, respondent/cross-appellant Ralph Miller was employed as an operator in the production department of Pacific Engineering Company of Nevada in Henderson, Nevada, when his low back was injured in a job accident. Later in 1984, he underwent L3-4 and L4-5 discectomy surgery and laminectomy surgery. Miller filed a claim for worker compensation with the appellant/cross-respondent State Industrial Insurance System (SIIS).
In October 1985, Miller was rated at twenty-three percent (23%) whole body permanent partial disability (PPD) impairment by Dr. Butters, SIIS medical advisor; in November 1985, pursuant to former NRS 616.607(1), he elected to receive a onetime lump sum payment from SIIS of $45,236.22[1] rather than receive monthly payments of $281.60 until he reached the age of 68 on February 14, 2015.
Miller’s work-related injury worsened thereafter. After reopening his claim and receiving further medical benefits, including temporary total disability (TTD) compensation,[2] Miller *1114 underwent a second PPD evaluation in 1987 and was found to have a PPD whole body impairment of twenty-seven percent (27%). In January 1988, he received a second one-time lump sum payment of $7,768.60[3] for the additional four percent (4%) disability in lieu of receiving $48.97 in monthly payments until he reached the age of 70[4] on February 14, 2017.
In February 1993, Miller was granted permanent total disability (PTD) status after careful review by SIIS’s medical advisor and administrative staff.
Miller was entitled to receive $1,360.40 per month as PTD benefits (66% percent of his average monthly wage of $2,040.60) pursuant to former NRS 616.580(1)(a). However, this amount for Miller’s total disability needed to be adjusted to reflect the lump sum payments Miller received for his partial disability. In calculating the amount of PTD benefits SIIS would actually pay, SIIS declared that it would deduct the percentage of Miller’s PPD, 27 %, from his total monthly PTD payment until his 68th birthday. At that time, SIIS would remove the 23% reduction and deduct only the remaining 4% of his total monthly PTD payment until his 70th birthday. After the 70th birthday, SIIS would initiate the full monthly PTD payment of $1,360.40. Thus, the monthly calculation would be as follows:
$2040.60 x % = $1360.40
$1360.40 x 73% (100% - 23% - 4%) = $993.09 (to age 68)
$1360.40 X 96% (100% - 4%) = $1305.98 (to age 70)
In 1993, Miller filed an appeal from SIIS’s decision and a hearing was held before a hearing officer. The hearing officer affirmed SIIS’s determination. Miller then filed an appeal from that decision with an appeals officer. In 1994, the appeals officer held that SIIS erred in reducing Miller’s PTD benefits by the percentage of previously awarded PPD, concluding that, pursuant to former NRS 616.613(1), SIIS should reduce the PTD only by the actual dollar amount of PPD benefits paid to Miller rather than by the percentage of his PPD. Accordingly, SIIS could only reduce Miller’s PTD compensation until it recovered the exact amount of the lump sums. Once the exact sums were recovered, there could be no further deduction. Under this requirement, the amount reduced from Miller’s monthly PTD compensation would *1115 be substantially less than under the “percentage of disability” formula used by SIIS.
In response to this decision, SIIS filed a petition for judicial review with the district court in April 1994. Miller later cross-petitioned, claiming that the appeals officer erred in permitting SIIS to deduct any previous PPD compensation paid to Miller. In February 1995, the district court affirmed the appeals officer’s decision by denying both the petition and cross-petition for judicial review.
SIIS filed this appeal and now claims that the July 1, 1995, amended version of NRS 616.580, now codified as NRS 616C.440, which is retroactively applicable to Miller’s PTD claim, mandates that SIIS deduct the value[5] of Miller’s prior PPD awards from Miller’s PTD compensation, i.e., Miller’s PTD compensation should be calculated as 66% percent of his average monthly wage, less the amount he would have received in monthly compensation until the age used in calculating his lump sum award, to wit:
$2040.60 X % = $1360.40
- 281.60 until 2/14/15 1078.80
- 48.97 until 2/14/17
$1029.83
Accordingly, SIIS claims Miller’s PTD benefits should be paid at the monthly rate of $1,029.83 until 2/14/15, then increase by $281.60 to $1311.43 until 2/14/17, after which time Miller can receive the full amount of his PTD monthly payments. This calculation would allow SIIS to deduct substantially more from Miller’s PTD compensation than if SIIS could only deduct the actual amount paid to Miller in lump sum.
Miller filed a cross-appeal, claiming that there should be no deduction whatsoever based on the prior PPD awards. Nevertheless, the statute relevant to Miller’s cross-appeal, former NRS 616.613, has also been amended, NRS 616C.405, and Miller now concedes that his cross-appeal claim is meritless in light of the amendment.
In sum, there are three ways of reducing Miller’s PTD compensation that are or have been contemplated in this case. The first is to reduce the PTD compensation by the percentage of PPD. However, that method is no longer contemplated by the *1116 parties since the amended statutes do not allow for this type of deduction. The second is to reduce the PTD compensation until SIIS recovers the actual amount of PPD it awarded to Miller in lump sum. This is the method used by the appeals officer and upheld by the district court and urged by Miller here. The third is to reduce Miller’s monthly PTD compensation by the value of Miller’s previously received PPD lump sum awards, i.e., the amount per month that Miller would have received had he elected to receive monthly installments. This is the method urged by SIIS on appeal.
The sole issue presented by this appeal is how Miller’s PTD benefits are to be calculated under NRS 616C.440 (former NRS 616.580, as amended effective July 1, 1995).
The appeals officer and the district court did not have the benefit of this new statute when it made its decisions, and this court must now determine how the offset in payments should be calculated under it. The construction of an administrative statute is a question of law for this court’s de novo review. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993); Nyberg v. Nev. Indus. Comm’n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984); American Int’l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983).
The relevant portions of NRS 616C.440 state as follows:
1. Except as otherwise provided in this section and NRS 616C.175, every employee in the employ of an employer, within the provisions of chapters 616A to 616D, inclusive, of NRS, who is injured by accident arising out of and in the course of employment, or his dependents as defined in chapters 616A to 616D, inclusive, of NRS, is entitled to receive the following compensation for permanent total disability:
(a) In cases of total disability adjudged to be permanent, compensation per month of 66% percent of the average monthly wage.
(b) If there is a previous disability, as the loss of one eye, one hand, one foot or any other previous permanent disability, the percentage of disability for a subsequent injury must be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury, but such a deduction for a previous award for permanent partial disability must be made in a reasonable manner *1117 and must not be more than the total amount which was paid for the previous award for permanent partial disability.
4. If an employee who has received compensation in a lump sum for a permanent partial disability pursuant to NRS 616C. 495 is subsequently determined to be permanently and totally disabled, the compensation for the permanent total disability must be reduced as follows:
(a) If the employee has not received a minimum lump sum, the employee’s insurer shall deduct from the compensation for the permanent total disability an amount equal to the monthly installment rate for awards for permanent partial disability until the employee reaches the age upon which his disability was calculated; or

The provisions of this subsection are retroactive for all claims for compensation for a permanent total disability remaining open on July 1, 1995.

(Emphasis added).
Miller focuses on the language in NRS 616C.440(l)(b) for the proposition that SHS may only recover the exact amount of compensation actually paid to him: “[SJuch a deduction for a previous award for permanent partial disability must be made in a reasonable manner and must not be more than the total amount which was paid for the previous award for permanent partial disability.” (Emphasis added). Thus, he contends that this court should affirm the appeals officer’s decision on the grounds that the 1995 amendments do not change the result in his case and actually support the appeals officer’s decision. We disagree with Miller’s contention.
NRS 616C.440(l)(b) is not as specific as the language in NRS 616C.440(4)(a), which clearly controls the present case. NRS 616C.440(l)(b) does not speak specifically to previous PPD awards paid in lump sum pursuant to NRS 616C.495 (former NRS 616.607), as Miller was paid. Moreover, NRS 616C.440(l)(b) contains language regarding a subsequent injury. Miller suffered no “subsequent injury” upgrading him to PTD status. In contrast, NRS 616C.440(4)(a) is quite specific and dispositive of the instant case. Tracking the language in that subsection as quoted above, Miller, the employee, received compensation in a lump sum for a PPD pursuant to NRS 616C.495 (former NRS 616.607) and was subsequently determined to be permanently and totally disabled. Accordingly, the compensation for the PTD must be reduced as follows: since Miller did not receive a minimum lump sum, SIIS must deduct from the com *1118 pensation for PTD “an amount equal to the monthly installment rate” for his PPD awards until he “reaches the age upon which his disability was calculated.”
Rules of statutory construction provide that “a specific statute takes precedence over a general statute.” SIIS v. Surman, 103 Nev. 366, 368, 741 P.2d 1357, 1359 (1987). We agree with SIIS that NRS 616C.440(4)(a) contains language that is specifically applicable to the instant case — a case where the PPD awards were paid in a lump sum pursuant to NRS 616C.495 (formerly NRS 616.607). Accordingly, SIIS may deduct the value of the compensation paid to Miller as represented in the monthly installments Miller would have received had he not taken a lump sum payment.
In SIIS v. Snyder, 109 Nev. 1223, 1228, 865 P.2d 1168, 1171 (1993), this court stated the following:
An administrative agency such as SIIS, charged with the duty of administering an act, is impliedly clothed with power to construe the relevant laws and set necessary precedent to administrative action. The construction placed on a statute by the agency charged with the duty of administering it is entitled to deference. We find the SIIS’ requirements to be a reasonable construction of and consistent with the legislative intent behind NRS 616.580.
(Citations omitted). SIIS, the administrative agency charged with the duty of administering the statute at issue in this case, is entitled to receive deference from this court to its interpretations of the laws it administers so long as such interpretations are “reasonable” and “consistent with the legislative intent.” Id. Given that SIIS’s interpretation of NRS 616C.440(4)(a) is correct when examining the specific language of that subsection, Miller would nevertheless have us believe that this interpretation is unreasonable and inconsistent with the legislative intent behind NRS 616C.440. Again, we disagree with Miller.
Miller argues that SIIS’s interpretation of NRS 616C.440(4) is unreasonable as SIIS will be unjustly enriched if it is allowed to recapture the value, rather than the actual amount, of the prior lump sum PPD awards paid to him. Miller is right that SIIS will collect more through its proposed method than if it were only allowed to recover the actual amount of the lump sums paid to Miller. However, we fail to see how this qualifies as unjust enrichment.
Miller’s argument ignores the commercial reality that money has value over time and that the lump sum awards given to Miller represented the present-day value of the total payments he would *1119 have received had he elected monthly or annual payments over a nearly 29-year period. Thus, the lump sums and installment payments are financial equivalents. In calculating the present-day value of the installment payments, SIIS reduced the amount of the total payments Miller would have received in installments to reflect the then present value of the stream of income. When the present value of money due in the future is reduced to present value, some factor must be used to reflect the reasonable earning power of the money over time. That factor varies based on what is viewed as a reasonable rate of interest. In the instant case, the factor used to calculate the present value of Miller’s awards was established by using actuary tables adopted by the Division of Industrial Relations of the Department of Business and Industry for the State of Nevada.[6] According to SIIS, the installment payment plan offered Miller in 1985 would have been the approximate equivalent of investing the money in a savings account insured by the federal government. In 1985, Miller had the option of accepting the guaranteed annual return or of taking his chances in generating a higher yield. Miller elected to take the lump sums and had the option of directing his investment personally. If Miller had not elected to take the lump sums, he would have received the monthly installments. It is exactly those identical installment amounts that SIIS is seeking to offset from Miller’s PTD benefits. Indeed, it is reasonable to assume that if SIIS had possession of the lump sum money paid to Miller, SIIS would gain interest income from that money sufficient to pay Miller the monthly PPD installments as they came due over the approximately 29-year period.
In fact, if Miller prevails in this matter, it is Miller, not SIIS, who will be unjustly enriched in that he will have the power to generate interest income from the lump sums with minimum deductions in his PTD benefits. This would amount to giving Miller an interest-free loan, i. e., it would have the same financial impact as if SIIS gave Miller a loan in 1985 and 1988 and allowed him to repay it, without interest, over a multi-year period.
We conclude that SIIS’s interpretation of NRS 616C.440(4) is reasonable in light of the financial circumstances outlined above.[7]
*1120 Miller contends, however, that there is no evidence in either pre-1995 legislative history or the legislative history of the 1995 amendments that the legislature intended to permit SIIS to deduct from a PTD award any amount other than the actual PPD compensation paid. In fact, he argues that the 1995 legislative history indicates that the legislature sought to correct the very alleged injustice of which he complains, i. e., SIIS is retrieving more than it has actually paid each claimant.
We do not read the legislative history as clearly as Miller reads it. In fact, it is quite plausible from our reading of the history that the legislature sought to address the alleged unfairness of SIIS reducing PTD payments by the prior PPD percentage of a distinct and separate injury. Miller points us to no conclusive legislative history indicating that the legislators did not intend to allow SIIS to recover the value of its prior lump sum PPD awards in cases falling within the purview of NRS 616C.440(4)(a). This court is not empowered to go beyond the face of an unambiguous statute to lend it construction contrary to its plain meaning and not apparent from the legislative history. See Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1016 (1979).
In sum, the plain language of NRS 616C.440(4)(a) permits SIIS to deduct from Miller’s monthly PTD benefits the value of his previously received PPD lump sum awards, i.e., the amount per month that Miller would have received had he elected to receive monthly installments.
Accordingly, we vacate the order of the district court and remand for proceedings consistent with this opinion.
Steffen, C. J., and Young, J., concur.

There is other evidence in the record that the lump sum payment was $46,145.77.

The SIIS offset a portion of his TTD compensation with a bi-weekly recoupment of his previous PPD award pursuant to former NRS 616.613.

There is other evidence in the record that the lump sum payment was $8,236.14.

Former NRS 616.605(6) provided that lump sum awards be calculated until the age of 70, or for a five-year period, whichever is later. In a previous version, lump sums were calculated to age 68. That is why Miller’s first lump sum at 23% was calculated to age 68.

Value takes into consideration that money loses value over time. It is SIIS’s contention that Miller’s lump sum awards reflected the present value of Miller’s PPD benefits and thus were the financial equivalent of the total money Miller was entitled to receive in monthly payments over the approximately 29-year span.

See former NRS 616.053 (current 616A.100); former NRS 616.607(5) (current NRS 616C.495(5)).

NRS 616C.440(4)(a) completely harmonizes with NRS 616C.405(1):
Except as otherwise provided in subsection 4 of NRS 616C.440, an employee who is receiving compensation for:
1. A permanent total disability is not entitled to compensation for permanent partial disability during the period when he is receiving compensation for the permanent total disability.
Under this statute, installment payments of PPD must cease when an injured worker is deemed eligible for PTD benefits. In cases such as the instant case, *1120 where the injured worker has elected to take his PPD award in a lump sum, it is not possible to “stop” payment of the PPD award during the period the injured worker is receiving PTD benefits. Logically, in the case of a lump sum PPD, it is necessary to reduce the PTD compensation level as provided in NRS 616C.440(4)(a) to prevent the injured worker from obtaining double recovery.