JUDIE AYALA, APPELLANT, *v.* CAESARS PALACE AND CDS COMPFIRST, RESPONDENTS.

No. 36979

June 26, 2003

71 P.3d 490

[Rehearing denied August 22, 2003]

[En banc reconsideration denied October 24, 2003]

*Clark & Richards* and *H. Douglas Clark,* Las Vegas, for Appellant.

*Santoro, Driggs, Walch, Kearney, Johnson & Thompson* and *Javier A. Arguello, Lee E. Davis* and *Daniel L. Schwartz,* Las Vegas, for Respondents.

Before ROSE, MAUPIN and GIBBONS, JJ.

## OPINION

*Per Curiam:*

At issue in this appeal is whether respondents properly adjusted appellant's workers' compensation temporary total disability benefits downward based upon a recalculation of her pre-injury income. While we conclude that an adjustment was warranted, the record does not support the adjustment that was made because it was based upon the wrong period of earnings. Therefore, the matter must be remanded for recalculation based upon the correct period of earnings, which in this case is one year.

On July 4, 1998, Judie Ayala fractured her right ankle in a work-related accident while employed by Caesars Palace. On July 5, 1998, Ayala underwent surgery to have the fracture repaired. Ayala submitted a workers' compensation claim to Caesars.

Caesars Palace is a self-insured employer for workers' compensation purposes. Claims made to Caesars are administered by CDS CompFirst. On August 10, 1998, CDS accepted Ayala's claim for temporary total disability. On September 11, 1998, Ayala provided information regarding her income history and loss to CDS for determination of her monthly income. In a letter dated October 2, 1998, CDS indicated that Ayala's monthly income had been established at $2,215.23 and that she had the right to appeal the determination within seventy days. Ayala did not appeal her income determination.

CDS then notified Ayala by letter dated March 10, 1999, that her monthly wage determination had been reduced to $560.40 based upon her income during the twelve weeks prior to injury, excluding concurrent employment income. Ayala timely appealed the new calculation to the Department of Administration. On April 19, 1999, the hearing officer issued a decision remanding the wage determination to CDS for a recalculation of the average monthly wage based upon a one-year period of earnings. Ayala did not appeal the order of remand.

CDS subsequently notified Ayala by letter dated May 28, 1999, that the benefit level of $560.40 would stand. Ayala appealed the determination, and the appeals officer affirmed the benefit-level determination on February 10, 2000. Ayala then petitioned the district court for judicial review, which was denied on October 18,

2000. Ayala now appeals the district court's order denying the petition for judicial review.

This court's role, like that of the district court, in reviewing an administrative decision, is to determine whether the agency's decision constituted an abuse of discretion.[1] This court's review is limited to the record before the agency.[2] Furthermore, "[a]lthough this court independently reviews an agency's legal determinations, 'the agency's conclusions of law, which will necessarily be closely related to the agency's view of the facts, are entitled to deference, and will not be disturbed if they are supported by substantial evidence.'"[3] Substantial evidence is that "which a reasonable person might accept as adequate to support a conclusion."[4]

First, we address the issue of whether Ayala was precluded from arguing on appeal that the benefit level became fixed after seventy days due to her failure to appeal the hearing officer's remand for recalculation within thirty days. As a general rule, an order by a district court remanding a matter to an administrative agency is not an appealable order unless the order constitutes a final judgment.[5] While the issue here involved a remand by a hearing officer, rather than the district court, the final decision of the hearing officer was that benefits were owed to Ayala and that CDS's calculation reducing her benefit level was based on improper methodology. In essence, the hearing officer remanded the matter to CDS to consider evidence that it had failed to consider in determining Ayala's benefit level. The remand was not a "final judgment" on the merits; therefore, Ayala was not precluded by the doctrines of issue preclusion or claim preclusion from appealing the subsequent decision.[6] Furthermore, while NRS 616C.345(1) allows thirty days

[1]*SIIS v. Montoya,* 109 Nev. 1029, 1031, 862 P.2d 1197, 1199 (1993).

[2]*Id.*

[3]*Id.* at 1031-32, 862 P.2d at 1199 (quoting *Jones v. Rosner,* 102 Nev. 215, 217, 719 P.2d 805, 806 (1986)).

[4]*Id.* at 1032, 862 P.2d at 1199.

[5]*See State, Taxicab Authority v. Greenspun,* 109 Nev. 1022, 1024-25, 862 P.2d 423, 424-25 (1993) (stating that the district court's order of remand to an administrative agency to consider evidence it initially refused to review was not appealable as a final judgment); *see also Clark County Liquor v. Clark,* 102 Nev. 654, 657-58, 730 P.2d 443, 446 (1986).

[6]*See LaForge v. State, University System,* 116 Nev. 415, 419, 997 P.2d 130, 133 (2000) (stating that res judicata, or issue preclusion, applies when (1) the same issue that was decided in the prior action is presented in the current action; (2) there was a final decision on the merits; and (3) the party against whom the judgment is asserted was the same party in the prior action); *see also Executive Mgmt. v. Ticor Title Ins. Co.,* 114 Nev. 823, 835, 963 P.2d

in which to appeal a hearing officer's decision, Ayala could not have known whether she should appeal until after the recalculation was completed. The hearing officer's decision was issued on April 29, 1999. CDS notified Ayala of its recalculation by letter dated May 28, 1999. Ayala could not have timely appealed the recalculation from the date of remand because the recalculation was not made available to her before the time to appeal expired.

We turn now to Ayala's argument that the administrative agency was divested of jurisdiction to allow the wage determination to be altered after seventy days had lapsed. The appeals officer determined that he lacked jurisdiction to consider this argument, and the district court agreed, because Ayala had not brought this matter to the attention of the hearing officer and had not timely appealed the hearing officer's order to remand for a recalculation.

In order to remand the matter for recalculation, the hearing officer necessarily had to find that CDS had authority to alter its benefit-level determination after seventy days had expired. Hence, the issue was before the hearing officer, regardless of whether the parties had addressed it.[7] Furthermore, we have previously held that:

> Once the jurisdiction of the appeals officer is invoked, the appeals officer "must hear any matter raised before him on its merits, including new evidence bearing on the matter." Thus, the hearing before the appeals officer is more akin to a hearing *de novo* than to an appeal as we know it.[8]

Even if the hearing officer had not considered the issue of whether CDS could alter its benefit-level determination after seventy days, the appeals officer had the jurisdiction to hear any matter raised before him. Hence, the appeals officer and the district court erred in concluding that the appeals officer lacked jurisdiction to decide whether CDS had authority to alter its wage determination. We further conclude, however, that their error was harmless because

465, 473 (1998) (stating that collateral estoppel, or claim preclusion, includes the same elements as issue preclusion but embraces not only the grounds of recovery that were asserted in the prior suit but those that could have been asserted).

[7]*See Diaz v. Golden Nugget,* 103 Nev. 152, 154-55, 734 P.2d 720, 722 (1987) (holding that district court had erroneously concluded that the appeals officer lacked jurisdiction to consider the issue of rehabilitation benefits, which had not been brought to the attention of the hearing officer, because the hearing officer's decision to deny all benefits necessarily included the denial of rehabilitation benefits).

[8]*Id.* at 155, 734 P.2d at 723 (quoting NRS 616.5426(2) (currently codified as NRS 616C.360(2))).

CDS was not barred from altering its wage-benefit determination after seventy days.

NRS 616C.155(2) provides a mechanism for recovery of overpayments by the insurer. The statute provides:

> 2. If, within 30 days after a payment is made to an injured employee pursuant to the provisions of chapters 616A to 616D, inclusive, of NRS, the insurer determines that it has overpaid the injured employee as a result of a clerical error in its calculation of the amount of payment, or as a result of using improper or incorrect information to determine the injured employee's eligibility for payment or to calculate the amount of payment, the insurer may deduct the amount of the overpayment from future benefits related to that claim to which the injured employee is entitled, other than accident benefits, if:
>
> (a) The insurer notifies the injured employee in writing of its determination;
>
> (b) The insurer informs the injured employee of his right to contest the deduction; and
>
> (c) The injured employee fails to contest the deduction or does so and upon final resolution of the contested deduction, it is determined that such an overpayment was made.

NRS 616C.315(2), which, according to Ayala, precludes an insurer from recalculating the benefit-level determination once seventy days have elapsed, provides, in relevant part:

> 2. Except as otherwise provided in NRS 616B.772, 616B.775, 616B.787 and 616C.305, a person who is aggrieved by:
>
> (a) A written determination of an insurer; or
>
> (b) The failure of an insurer to respond within 30 days to a written request mailed to the insurer by the person who is aggrieved,
>
> may appeal from the determination or failure to respond by filing a request for a hearing before a hearing officer. Such a request must be filed within 70 days after the date on which the notice of the insurer's determination was mailed by the insurer or the unanswered written request was mailed to the insurer, as applicable.

A close reading of NRS 616C.315(2) shows that the seventy-day appeal period applies to particular parties: those aggrieved by a written determination of the insurer and those aggrieved by the insurer's failure to respond to a written request within thirty days. Nothing in the language of the statute suggests that the insurer is one of the intended aggrieved parties. Nor does the language of the statute suggest that the insurer is barred from recalculating the ben-

efit level after seventy days. In fact, such a reading would render NRS 616C.155(2) meaningless. If we were to agree with Ayala's interpretation of the statutes, an insurer that determines it has made a mistake in calculating benefit levels after expiration of the seventy-day appeal period could invoke NRS 616C.155 to recover an overpayment, but it could not reduce future payments. Instead, it would have to make the overpayment each time, then use NRS 616C.155 to recover the overpayment, then make another over-payment. Such a result would be absurd.[9]

Finally, we address Ayala's argument that, even if the insurer had the authority to recalculate the benefit level, its methodology was improper. Ayala asserts that the actual wage history and the methodology used to recalculate her benefits are not in the record, and that there is no factual predicate upon which the appeals officer could base his findings of fact, and therefore, the findings cannot be sustained. Ayala further contends that while the initial calculation was properly based upon a projection of her hourly rate pursuant to NAC 616C.435(5), the subsequent reduction was not in accord with that regulation. Ayala contends that the appeals officer not only incorrectly interpreted the statutes and regulations, but that his conclusions are not supported by substantial evidence. Consequently, she argues, the district court erred by denying her petition for judicial review.

On appeal to the hearing officer, the hearing officer reversed CDS's determination of benefits and remanded the matter for re-calculation based on *SIIS v. Montoya*[10] and NAC 616C.435. In ordering CDS to recalculate Ayala's monthly wage based on a one-year period of earnings, the hearing officer stated:

> Review of the information provided notes Mrs. Ayala was injured on her first day of employment based on the "Banquet B" list. However, testimony and the record reflect [ ] Mrs. Ayala has worked as a banquet waitress for a long period of time. Due to the nature of this work projecting a wage is very difficult, if not impossible. Therefore, based on NAC 616C.435 and the Montoya decision by the Nevada Supreme Court, the Administrator is REVERSED. The matter is REMANDED to recalculate the wage based on a one year period of earning.

In *Montoya,* this court reversed the district court's denial of a petition for judicial review from an appeals officer's order that the

[9]*See Glover v. Concerned Citizens for Fuji Park,* 118 Nev. 488, 492, 50 P.3d 546, 548 (2002) (stating that "the statute's language should not be read to produce absurd or unreasonable results"), *disapproved on other grounds by Garvin v. Dist. Ct.,* 118 Nev. 749, 59 P.3d 1180 (2002).

[10]109 Nev. 1029, 862 P.2d 1197 (1993).

claimant's wage calculation be based on the two weeks prior to the accident in which the claimant was fully employed. This court held that neither a calculation based on the prior twelve weeks of employment, as generally required by NAC 616.678 (currently codified as NAC 616C.435), nor a calculation based on the two weeks of full employment immediately preceding the injury, would adequately reflect the claimant's average monthly wage.[11] Hence, this court ordered the district court to remand the matter with instructions to calculate the average monthly wage based upon a one-year period of earnings.[12]

NAC 616C.435 provides, in pertinent part:

> 1. Except as otherwise provided in this section, a history of earnings for a period of 12 weeks must be used to calculate an average monthly wage.
> 2. If a 12-week period of earnings is not representative of the average monthly wage of the injured employee, earnings over a period of 1 year or the full period of employment, if it is less than 1 year, may be used. Earnings over 1 year or the full period of employment, if it is less than 1 year, must be used if the average monthly wage would be increased.
> 3. If an injured employee is a member of a labor organization and is regularly employed by referrals from the office of that organization, wages earned from all employers for a period of 1 year may be used. A period of 1 year using all the wages of the injured employee from all his employers must be used if the average monthly wage would be increased.

In the hearing officer's order, the hearing officer determined that Ayala had been a member of the culinary union one day prior to her accident. Therefore, a calculation based on NAC 616C.435(3) would not yield a result accurately reflecting Ayala's monthly gross wages. Hence, it appears the hearing officer ordered a recalculation based upon NAC 616C.435(2). However, a letter by CDS dated May 28, 1999, to Ayala informed her that the recalculation was based upon her income from union assignments from January 19, 1998, to July 4, 1998. It appears that CDS ignored the hearing officer's instructions that the recalculation be based on a period of one year.

At the hearing before the appeals officer, CDS represented that it had recalculated Ayala's wages based upon a one-year period, but that the new calculation yielded a lower number than $560.40 per month. Because the number was lower, it would keep paying the $560.40 per month. The appeals officer found this representation to be true. However, the record does not reflect that CDS used a one-year period of earnings to recalculate the benefit level, but that

---

[11]*Id.* at 1033-34, 862 P.2d at 1200-01.

[12]*Id.* at 1034, 862 P.2d at 1201.

it based its recalculation upon seven months of employment referrals based upon union membership. The hearing officer found that Ayala had belonged to the union only one day prior to her accident. The appeals officer found that there was conflicting testimony regarding the duration of Ayala's membership with the culinary union, but did not make new findings or issue a new order to recalculate Ayala's benefits based only upon her union membership. In any event, CDS contravened the hearing officer's order to recalculate Ayala's wages based upon her work as a banquet waitress for one year prior to the injury.

"An agency ruling without substantial evidentiary support is arbitrary or capricious and therefore unsustainable."[13] Because there is no evidence in the record to support the contention made by Caesars Palace and CDS that a recalculation was made based upon the one-year period prior to Ayala's accident, the appeals officer's order affirming the new calculation was an abuse of discretion. Hence, the district court's denial of Ayala's petition for judicial review was also an abuse of discretion. We reverse the order denying Ayala's petition for judicial review with regard to this issue and remand this matter to the district court. On remand, the district court should remand the matter to the appeals officer with instructions to remand to CDS to recalculate the benefit level based upon a one-year period of earnings.[14] We affirm the district court's order denying the petition for judicial review with respect to all other issues.

---

[13]*SIIS v. Christensen,* 106 Nev. 85, 88, 787 P.2d 408, 410 (1990).

[14]Ayala further contends that the appeals officer abused its discretion by allowing CDS to omit Ayala's concurrent employment with the Mirage as part of its wage calculation under NAC 616C.444 and NAC 616C.447. However, the record reflects that Ayala had left her position at the Mirage before the injury, so it was not a concurrent employment under NAC 616C.447. Furthermore, she worked there as a cashier, not as a banquet waitress. Therefore, CDS properly excluded those wages from its calculation.