CITY PLAN DEVELOPMENT, INC., APPELLANT, *v.* OFFICE OF THE LABOR COMMISSIONER, DEPARTMENT OF BUSINESS AND INDUSTRY, STATE OF NEVADA, RESPONDENT.

No. 40636

August 11, 2005                              117 P.3d 182

*Orin G. Grossman,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, and *Dianna Hegeduis,* Senior Deputy Attorney General, Carson City, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, ROSE, J.:

In this appeal, we examine the parameters of the Labor Commissioner's authority to conduct hearings, render decisions and assess penalties involving prevailing wage issues under Nevada labor law. We conclude that, under the circumstances of this case, the Labor Commissioner properly heard and rendered a decision on public works project employees' claims alleging inadequate payment under Nevada's prevailing wage statutes. While substantial evidence supports both the Labor Commissioner's determination that the employees were not paid prevailing wages and his corresponding awards, we nevertheless conclude that the Labor Commissioner improperly assessed the employer a double penalty.

### FACTS

The Clark County Board of County Commissioners awarded appellant City Plan Development, Inc., a contract to build a public work, Fire Station #26, which was completed in September 1999. Thereafter, twenty individuals filed wage claims against City Plan. The Office of the Labor Commissioner issued a notice of violations and scheduled a hearing on the matter. Former Deputy Labor Commissioner David Hill presided over the hearing and issued a decision adverse to City Plan on June 13, 2000.

City Plan petitioned the district court for judicial review of the June 13 decision. The district court set aside the June 13 decision and remanded the matter for a new hearing limited to the wage claims of Rogelio Arteaga, Juan Cruz Guerrero, Sergio Reyes, Victor Chavarin Flores, Jesus Jarero Victor, Jose Luis Jarero, Bernabe Lopez, and Narsiso Vallejo Guillen. The district court also ordered that if the hearing officer ultimately awarded any monetary amount to the claimants, he had to specify precisely the dates and hours worked by the claimant, the wage rate applicable to the work performed, and the wage rate actually paid.

Subsequently, Larry Dizon, a senior investigator in the Labor Commissioner's Office, prepared an amended administrative complaint pertaining to the eight specified individuals. Gail Maxwell,

the chief compliance audit investigator, signed it. Labor Commissioner Terry Johnson, acting as the hearing officer, conducted a second hearing.

At the hearing, Lila Rodrigues, who testified that City Plan employed her in various administrative capacities, explained that she usually prepared the payroll for the fire station project employees from timecards submitted by supervisors and signed by the employees. Even so, on some occasions, according to Rodrigues, the foreman or other supervisors would call in the employees' hours, which she copied onto timecards used to calculate the payroll. Later, the employees signed the timecards, either when given to them by a superintendent at the jobsite or when they picked up their paychecks.

Rodrigues testified that the employees' wages were determined in accordance with predetermined public works projects wage schedules for specific job classes, based on notations on the employees' timecards indicating their particular job classification. For instance, Rodrigues explained, a notation of "framing and sheathing" indicated a particular type of carpentry. Apparently, the supervisors made the notations on the timecards.

Next, the Labor Commissioner heard testimony from five of the claimant employees: Juan Cruz Guerrero, Jesus Jarero Victor, Jose Luis Jarero, Narsiso Vallejo Guillen, and Victor Chavarin Flores. With the exception of Cruz Guerrero, each of these claimants testified that he had worked on the City Plan fire station project for approximately 3½ days in April 1999, or a total of 37.5 hours. These four claimants also testified and agreed that Vallejo Guillen, on his and their behalf, had negotiated with Jose Ochoa, a City Plan foreman in charge of hiring workers to perform framing (and layout and plating) work on the project, for a total payment of $1800. Accordingly, the claimants asserted they were each paid a flat rate of approximately $360 for their work, or one-fifth of the $1800 payment.[1]

These four claimants also testified to endorsing checks for payments that they never received, receiving inaccurate payment documentation, signing blank timecards, and/or discovering that their signatures had been forged on certain documents. For instance, Jarero Victor averred that he had signed a blank timecard and had never written any work hours on it. He confirmed at the hearing that the timecard nevertheless indicated that he had worked 44.25 hours at $29.29 per hour and 4.25 hours at $43.93 per hour, for which he was owed a net total of $1100. But when he went to

---

[1] The fifth person implicated in the negotiated $1800 payment is not involved in this appeal.

Ochoa's house to pick up his paycheck, he said Ochoa instructed him to endorse the $1100 check over to Ochoa, and Ochoa paid him only $360 in cash in return. Jarero Victor also identified subsequent timecards indicating that he had earned additional wages, but those cards did not bear his signature and reflected dates when he had worked for a different employer. According to Jarero Victor, he later received a W-2 form indicating that he had earned $5000 during his City Plan employment. Nonetheless, Jarero Victor insisted that he had never received more than $360 for his work on the project.

The other three claimants who were part of the negotiated framing agreement similarly testified that they had signed blank timecards; some signed these documents for fear of not getting paid at all. At least one of them admitted to having endorsed a $1100 paycheck, but he and each of the others denied ever actually receiving anything besides the approximately $360 cash payment. They also denied receiving and endorsing subsequent City Plan paychecks.

The fifth claimant, Cruz Guerrero, testified that he began work on April 26 or 27, 1999, and continued working for approximately two months. According to Cruz Guerrero, he performed carpentry work on the project, leveling walls and installing plywood sheets; at the hearing, Rodrigues suggested that this work was consistent with the separate job classification of ''laborer,'' also within the field of carpentry. Like the other claimants, Cruz Guerrero testified that he had entered into a separate oral agreement with Ochoa—Cruz Guerrero was to be paid $16 per hour. Cruz Guerrero averred that, while he was actually paid $16 per hour for the first 39½ hours he worked, the corresponding paycheck indicated that he had only worked 25 hours. Cruz Guerrero also testified that he had signed several blank timecards and that his other paychecks also reflected fewer hours than he had actually worked and, consequently, a rate of pay substantially higher than what he had actually received.

Finally, Dizon, the Labor Commissioner's Office investigator, also testified at the hearing. In particular, he noted that his investigation of the original complaints had resulted in certain findings that corroborated the claimants' statements.

After the hearing, the Labor Commissioner determined that City Plan had violated the prevailing wage statutes and was indebted to each of the above claimants. As directed by the district court, the Labor Commissioner's decision listed in detail the dates and hours worked by the claimants, the type of work performed, the rate of pay received, and the rate of pay that City Plan should have paid. The decision specified the amount thereby owed each claimant, assessed an administrative penalty, and mandated forfei-

tures and a period from which City Plan would be disqualified from being awarded public work contracts.

City Plan petitioned the district court for judicial review, which the court denied. City Plan appeals, challenging the Labor Commissioner's authority to proceed with wage claims in this case and the administrative decision itself.

## DISCUSSION

### Standard of review

This court, like the district court, generally reviews administrative decisions under an abuse of discretion standard.[2] An abuse of discretion occurs when the record does not contain substantial evidence supporting the administrative decision.[3] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[4] While this court reviews purely legal questions de novo, a hearing officer's conclusions of law, which will necessarily be closely tied to the hearing officer's view of the facts, are entitled to deference on appeal.[5] This court has determined that " '[a]n administrative . . . decision based on a credibility determination is not open to appellate review.' "[6]

### Authority of the Labor Commissioner

City Plan makes several challenges to the Labor Commissioner's authority to proceed in this matter. City Plan first argues that the Labor Commissioner lacked authority to hear this matter because he failed to follow the requirements of NRS 607.160 and NRS 607.170 before holding the administrative hearing. NRS Chapter 607 governs the Office of the Labor Commissioner, providing that the Labor Commissioner "[s]hall enforce all labor laws of the State of Nevada."[7] Accordingly, that chapter defines the scope, generally, of the Labor Commissioner's permissible powers. NRS 607.160 and NRS 607.170 authorize the Labor Commissioner, after due inquiry, to take assignments of wage claims for prosecution or to refer claims to the Attorney General when the claimants

---

[2]*Ayala v. Caesars Palace,* 119 Nev. 232, 235, 71 P.3d 490, 491 (2003).

[3]*Construction Indus. v. Chalue,* 119 Nev. 348, 352, 74 P.3d 595, 597 (2003).

[4]*Id.*

[5]*Ayala,* 119 Nev. at 235, 71 P.3d at 491.

[6]*McClanahan v. Raley's, Inc.,* 117 Nev. 921, 925, 34 P.3d 573, 576 (2001) (quoting *Langman v. Nevada Administrators, Inc.,* 114 Nev. 203, 209, 955 P.2d 188, 192 (1998)).

[7]NRS 607.160(1)(a).

are financially unable to employ counsel.[8] Nevertheless, these provisions, which use the word ''may,'' not ''shall,'' do not set forth mandatory prehearing procedures that the Labor Commissioner was required to follow in this matter but rather delineate the general prosecutorial authority of the Labor Commissioner (and Attorney General) in carrying out his duties under all of the labor laws.[9]

As noted above, this is a prevailing wage matter, brought under the specific public works project statutes in NRS Chapter 338.[10] Before an amendment in 2003, NRS 338.015 specifically permitted the Labor Commissioner to ''hold hearings on and assess'' penalties for violations of NRS 338.010 to 338.130, inclusive.[11] That statute never mandated that the Labor Commissioner comply with any NRS 607.160 and NRS 607.170 prehearing ''procedure''; instead, it required the Labor Commissioner, *after* rendering a decision, to notify the Attorney General[12] of any violations for prosecution.[13] Accordingly, the Labor Commissioner acted within the scope of his statutory power in conducting the hearing in this instance.

Next, City Plan asserts that the Labor Commissioner's Office failed to comply with the requirements of NAC 607.200 because the amended administrative complaint was not verified or filed, and it was signed more than twenty-four months after the last act complained about in the complaint. According to City Plan, the Labor Commissioner was therefore without jurisdiction over this matter. The title of NAC 607.200 is ''Practice Rules: Pleading: Complaints to the Commissioner.'' This section plainly covers the requirements for individuals filing complaints with the Labor Commissioner, not the requirements for the Labor Commissioner's Of-

---

[8]*See also* NRS 607.175.

[9]*See Tarango v. SIIS,* 117 Nev. 444, 451 n.20, 25 P.3d 175, 186 n.20 (2001) ('' '[I]n statutes, ''may'' is permissive and ''shall'' is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature.' '' (quoting *S.N.E.A. v. Daines,* 108 Nev. 15, 19, 824 P.2d 276, 278 (1992))).

[10]The parties do not dispute that the claimants were employed at the site of a public work. *See* NRS 338.040, *amended by* 2001 Nev. Stat., ch. 259, § 6, at 1147.

[11]NRS 338.015(1), *amended by* 2001 Nev. Stat., ch. 259, § 3, at 1146, *and by* 2003 Nev. Stat., ch. 140, § 18, at 798.

[12]The 2001 amendment of NRS 338.015 substituted ''attorney general'' for ''district attorney.'' 2001 Nev. Stat., ch. 259, § 3, at 1146.

[13]*See SIIS v. Miller,* 112 Nev. 1112, 1118, 923 P.2d 577, 580 (1996) (noting that '' 'a specific statute takes precedence over a general statute' '' (quoting *SIIS v. Surman,* 103 Nev. 366, 368, 741 P.2d 1357, 1359 (1987))).

fice filing a claim. Here, the claimants filed their wage claims with the Labor Commissioner in 1999, well within the period prescribed by NAC 607.200, making the claims timely under the regulation. The Labor Commissioner's subsequent amended complaint was not governed by NAC 607.200, and therefore, it did not have to meet that regulatory requirement.

### Fairness of the administrative process

[Headnotes 7, 8]

City Plan alleges that the administrative process was unfair because the Labor Commissioner lacked the requisite authority to hold the hearing since he served as the prosecutor and the hearing officer in this matter in violation of City Plan's due process rights. City Plan further contends that the Labor Commissioner should have disqualified himself because his alleged multiple roles created an appearance of impropriety mandating disqualification under the Nevada Code of Judicial Conduct (NCJC) Canon 3E(1)(a). Notably, however, City Plan failed to provide any support for the proposition that the Canons guiding judicial conduct apply to the actions of an administrative adjudicator like the Labor Commissioner. In the absence of relevant authority, we will not consider City Plan's NCJC disqualification arguments.[14] Therefore, we will only address City Plan's due process claims.

NRS 233B.122(1), which is part of Nevada's Administrative Procedure Act, states that no individual "who acts as an investigator or prosecutor in any contested case may take any part in the adjudication of such case."[15] Here, the record shows that Dizon, a senior investigator, conducted the initial investigation, made recommendations, and prepared the amended complaint. Gail Maxwell, the chief compliance audit investigator for the Office of the Labor Commissioner, then signed the amended complaint. The Labor Commissioner, therefore, did not participate in the filing or

---

[14]*Holland Livestock v. B & C Enterprises,* 92 Nev. 473, 474, 553 P.2d 950, 950 (1976).

[15]NRS 233B.122 applies only to a "contested case." A "contested case" is defined as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing, or in which an administrative penalty may be imposed." NRS 233B.032. Together, NRS 607.205 and NRS 607.207 authorize the Labor Commissioner, upon notice and hearing, to render a decision regarding public works project prevailing wage issues. And NRS 338.090(2)(b), both at the time the original complaints were filed and now, clearly authorizes the Labor Commissioner to impose an administrative penalty when the prevailing wage provisions are violated. Accordingly, this matter constitutes a contested case subject to the prohibitions of NRS 233B.122. *See Citizens for Honest Gov't v. Sec. of State,* 116 Nev. 939, 11 P.3d 121 (2000).

prosecution of the complaint; instead, he merely acted as the hearing officer on the matter.

Further, the Labor Commissioner's actions comported with Nevada law, which authorized him under NRS 338.015(1) and NRS 338.090, respectively, to hold hearings and assess fines for violations of the prevailing wage provisions. Additionally, NRS 607.205 provides that the Labor Commissioner may conduct hearings to aid the Commissioner's enforcement responsibilities under Nevada's labor laws, including NRS 338.030, which relates to prevailing wages.

Moreover, this court has previously noted that "[i]t is not uncommon in administrative law to find the combination of investigating, prosecuting and judging functions."[16] Importantly, such a combination in one office, standing alone, does not constitute a denial of due process.[17] In *Rudin v. Nevada Real Estate Advisory Commission,* this court addressed a similar factual situation and stated that the Nevada Real Estate Advisory Commission did not violate a real estate licensee's due process rights because "[t]he investigation was conducted by investigators, the prosecution by counsel for the Commission, and the decision was made by the Commission itself."[18]

Likewise, here, because the senior investigator conducted the investigation, the chief compliance audit investigator signed the complaint, and the Labor Commissioner acted as the hearing officer, the administrative process was not manifestly unfair and did not violate City Plan's rights. Significantly, the United States Supreme Court has noted:

> [T]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.[19]

---

[16]*Rudin v. Nevada R. E. Advisory Comm'n,* 86 Nev. 562, 565, 471 P.2d 658, 660 (1970).

[17]*Id.*

[18]*Id.*

[19]*Withrow v. Larkin,* 421 U.S. 35, 47 (1975).

City Plan has failed to overcome this heavy burden. As noted, the record demonstrates that the Labor Commissioner did not fill the roles of prosecutor and adjudicator.[20] In addition, the record shows that after reviewing the evidence as it related to the eight claimants named in the amended complaint, the Labor Commissioner found that only five of the eight individuals had substantiated their claims. This detracts credence from the argument that the Labor Commissioner was biased and that his decision in the case was a ''preordained factual and legal conclusion.'' Thus, we conclude that City Plan's arguments are without merit.[21]

*Application of the prevailing wage law to the claimants*

City Plan alleges that because the claimants involved are undocumented aliens, NRS 422.065 expressly precludes City Plan from being required to pay them prevailing wages. According to City Plan, the Attorney General and the Labor Commissioner ''aided and abetted these illegal acts'' of bestowing public benefits on the claimants at the two administrative hearings, one district court proceeding, and now on appeal.

NRS 422.065(1)(b) provides:

> Notwithstanding any other provision of state or local law, a person or governmental entity that provides a state or local public benefit . . . [i]s not required to pay any costs or other expenses relating to the provision of such a benefit after July 1, 1997, to an alien who, pursuant to 8 U.S.C. § 1621, is not eligible for the benefit.

Section 1621(c)(1) defines a ''[s]tate or local public benefit'' as:

> (A) any grant, contract, loan, professional license, or commercial license provided by an agency of a State or local gov-

---

[20]*See also State, Dep't Mtr. Vehicles v. Thompson,* 102 Nev. 176, 178, 717 P.2d 580, 581 (1986) (discussing NRS 233B.122(1) in the context of allegations that a hearing officer improperly acted as a prosecutor during an administrative hearing).

[21]City Plan argues that Deputy Labor Commissioner David Hill should have continued to fulfill the role of hearing officer upon remand, absent a showing of unavailability. Respondent points out that Hill was unavailable because he was no longer employed by the State of Nevada. *See* NRS 607.205 (authorizing the Labor Commissioner or ''a person designated from the commissioner's regular staff'' to conduct hearings). Although City Plan asserts that if Hill was unavailable, the Director of the Department of Business and Industry was required to appoint a new hearing officer under NRS 232.520(7), we note that that provision merely authorizes the director to designate another to perform the director's duties; it does not apply to the duties of the Labor Commissioner or prohibit the Labor Commissioner from holding hearings, as authorized by NRS 607.205. Accordingly, this argument is meritless.

ernment or by appropriated funds of a State or local government; and

(B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government.

Here, no payments of costs or expenses related to a state or local public benefit are at issue. While the public works contract between the county and City Plan may constitute a public benefit under § 1621, the payment of the prevailing wage under that contract does not constitute such a benefit. City Plan is simply not the entity ''providing'' the public benefit contract under the statute and, therefore, is not included in the statute's express terms excusing payment. Instead, the payment of the prevailing wage is required when an entity enters into a contract to perform a public work.[22] Thus, NRS 422.065 does not apply.

Likewise, we conclude that NRS 612.448, which addresses the payment of unemployment benefits based on an alien's status, does not apply because the issue at hand involves the payment of prevailing wages, not unemployment benefits. The statutes that apply, NRS 338.040 and NRS 338.050, address those persons deemed to be employed on public works and therefore entitled to prevailing wages. Neither section excludes an individual on the basis of his immigration status. Furthermore, the Legislature amended NRS Chapter 338 in 2003 and mandated that the prevailing wage laws be enforced ''[w]ithout regard to whether an employee or workman is lawfully or unlawfully employed.''[23] This further evidences the Legislature's intention that any worker falling within the purview of the prevailing wage laws be paid accordingly regardless of his status as an illegal alien.

In 1999, NRS 338.050 specifically stated that all workers employed by a contractor or subcontractor who perform work on a public work are subject to the provisions of NRS 338.010 to NRS 338.090.[24] At that time, NRS 338.040 provided that ''[w]orkmen . . . necessary in the execution of any contract for public works are deemed to be employed on public works.''[25] And, NRS

---

[22]*See* NRS 338.020.

[23]NRS 607.160(1)(a) (as amended in 2003).

[24]NRS 338.040, *amended by* 2001 Nev. Stat., ch. 259, § 6, at 1147-48.

[25]*Id.*

338.010(14) defined "workman" as a "skilled mechanic, skilled workman, semiskilled mechanic, semiskilled workman or unskilled workman." The claimants fall within the definition of "workman," and City Plan, a contractor, hired them to perform duties on a public work. It follows, therefore, that City Plan was required to pay claimants the prevailing wage regardless of their alien status. Allowing City Plan to hire undocumented workers and pay them beneath the prevailing wage scale because they are undocumented would circumvent the purpose of the prevailing wage statutes and would only encourage others to hire undocumented aliens to perform necessary work. Therefore, we conclude that the claimants' immigration status does not relieve City Plan of the duty to pay the required prevailing wage.

Finally, City Plan argues that the Labor Commissioner inappropriately classified the claimants as "laborers" and "carpenters," without the statutory authority to do so and, therefore, engaged in "ad hoc rule making." According to City Plan, this act is unfair because Nevada law fails to provide any job classifications, and it is virtually impossible to set wage rates without also establishing the corresponding classifications. This argument is unpersuasive.

NRS 338.030 sets forth the procedure for determining prevailing wages. Subsection 1 of that statute states that "[t]he public body awarding any contract for public work . . . shall ascertain from the Labor Commissioner the prevailing wage . . . for each craft or type of work." The Labor Commissioner's determination of the craft or work classification is an inherent part of the process. Therefore, the Labor Commissioner is obligated to define a classification or type of work and then to determine the prevailing wage for that classification.

This conclusion is supported by NAC 338.007, which was added by amendment in August 2000 and states that a " '[r]ecognized class of workmen' means a class of workmen recognized by the Labor Commissioner as being [in] a distinct craft or type of work for purposes of establishing prevailing rates of wages." This language demonstrates that the Labor Commissioner has the authority to determine and distinguish classifications of workers. Additionally, when acting in an adjudicative capacity, the Labor Commissioner must make any classification determination necessary to a complaint's resolution.[26] Here, the Labor Commissioner simply applied the evidence to his predefined classifications to determine each claimant's appropriate wage. Consequently, we reject

---

[26]*See generally* NRS 233B.121(8); NRS 233B.125.

City Plan's claim that the Labor Commissioner engaged in ad hoc rulemaking.

*Substantial evidence*

According to City Plan, even if the administrative process was properly carried out in this instance, the Labor Commissioner's decision is nonetheless unsupported by the record. City Plan erroneously contends that because the claimants did not testify as to: (1) what days and hours they worked, (2) the type of work they performed, and (3) how much they should have been paid, the record does not support the Labor Commissioner's determinations. As stated previously, the Labor Commissioner heard the testimony of Cruz Guerrero, Jarero Victor, Luis Jarero, Vallejo Guillen, and Chavarin Flores, each of whom testified that he was paid less than the prevailing wage.[27] After listening to this testimony, the Labor Commissioner noted that he particularly relied on the statements and strong credibility of the claimants themselves, as observed at the hearing, in rendering his decision.

Further, while both parties failed to provide this court with copies of the exhibits used at the hearing, it is apparent that the Commissioner reviewed several exhibits to formulate his decision on the work performed.[28] Additionally, he heard the testimony of City Plan's payroll specialist, Rodrigues, who testified that the foreman in charge of carpentry and framing supervised the claimants and that the carpentry and framing notations on the claimants' timecards reflected the type of work performed. Because an administrative hearing officer's decision based on a credibility determination is not open to review and because the claimants' testimony and other evidence is consistent with the Labor Commissioner's determinations,[29] we conclude that the Labor Commissioner's decision is supported by substantial evidence in the record, and it will not be disturbed.[30]

[27]*See generally* NRS 338.050 (providing that public works project employees are governed by the prevailing wage laws, regardless of the existence of any other contractual employment relationship).

[28]Moreover, this court has noted that " '[w]hen evidence on which a district court's judgment rests is not properly included in the record on appeal, it is assumed that the record supports the lower court's findings.' " *Borgerson v. Scanlon,* 117 Nev. 216, 221, 19 P.3d 236, 239 (2001) (quoting *Raishbrook v. Estate of Bayley,* 90 Nev. 415, 416, 528 P.2d 1331, 1331 (1974)).

[29]*McClanahan,* 117 Nev. at 925, 34 P.3d at 576.

[30]As the Labor Commissioner's decision is based on substantial evidence in the record, we reject City Plan's argument that the Labor Commissioner improperly used his personal knowledge to determine the work performed.

*Penalties*

In the instant case, the Labor Commissioner found that (1) City Plan was indebted to the five claimants in the total amount of $11,946.31, (2) an assessed penalty was due under NRS 338.090 in the amount of $11,946.31, (3) a forfeiture in the amount of $1550 was appropriate under NRS 338.060, and (4) City Plan was disqualified from being awarded a public works contract for two years. Although City Plan vaguely alleges that the Labor Commissioner failed to explain any of the penalties and maintains that the penalties are not supported in law or fact, City Plan only specifically challenges the Labor Commissioner's imposition of forfeitures and the penalties assessed under NRS 338.090 in its appellate briefs.[31]

As for the imposition of forfeitures, City Plan's assertions lack merit. NRS 338.060 explicitly stated that the Labor Commissioner has the authority to impose a forfeiture ranging from $10 to $25 per day, based on a sliding scale established by regulation.[32] In addition, that statute required notice of any such forfeiture to be inserted in the public works contract.[33] Therefore, City Plan, via the contract, was placed on notice that it faced forfeitures if it failed to pay employees the prevailing wage as required under Nevada law. Furthermore, the Labor Commissioner determined this figure well within the requirements of NRS 338.060, in accord with the monetary limit, or lack thereof, of City Plan's contractor's license.

Lastly, with regard to the $11,946.31 penalty assessed under NRS 338.090, City Plan alleges that such a penalty constitutes an impermissible double penalty. We agree. Initially, we note that the construction of a statute is a question of law that this court reviews de novo.[34] In construing a statute, a court should consider multiple legislative provisions as a whole.[35] When the language of a statute is unambiguous, this court will not look beyond the statute itself when ascertaining its meaning.[36] However, when a statute is sus-

---

[31]Regarding City Plan's vague arguments, we conclude that the Labor Commissioner properly imposed penalties because the facts of the case support their imposition and because NRS 338.017 specifically mandated a two-year disqualification at the time that City Plan failed to pay the appropriate prevailing wage, thereby giving appropriate notice.

[32]NRS 338.060(1) (1999) (amended 2001 and 2003).

[33]*Id.* (current version at NRS 338.060(5)).

[34]*Gallagher v. City of Las Vegas,* 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

[35]*Diamond v. Swick,* 117 Nev. 671, 676, 28 P.3d 1087, 1090 (2001).

[36]*Erwin v. State of Nevada,* 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995).

ceptible to more than one reasonable but inconsistent interpretation, the statute is ambiguous, and this court must determine the Legislature's intent.[37] When interpreting a statute, this court will look to the policy and spirit of the law and will seek to avoid an interpretation that leads to an absurd result.[38]

NRS 338.090 is entitled "Penalties," and subsection 2 addresses the Labor Commissioner's imposition of penalties for violations of the prevailing wage statutes. In 1999, it read in pertinent part:

> 2. The labor commissioner, in addition to any other remedy or penalty provided in this chapter:
>
> (a) Shall assess a person who, after a hearing, is found to have failed to pay the prevailing wage required pursuant to NRS 338.020 to 338.090, inclusive, an amount equal to the difference between the prevailing wages required to be paid and the wages he actually paid; and
>
> (b) May in addition impose an administrative fine not to exceed the costs he incurred to investigate and prosecute the matter.[39]

This provision is susceptible to more than one reasonable interpretation. As City Plan notes, the statute could be read to provide for one assessment only, equal to the amount of the prevailing wages owed less the amount actually paid. Or, as the Labor Commissioner maintains, the provision could be read to provide for two assessments equal to the difference between the required prevailing wage and the actual amount of wages paid—one as a penalty and one as wages due to the claimants. The statute is ambiguous, and accordingly, a review of its legislative history is appropriate.

Subsection 2 of NRS 338.090 was added to the statute as part of Assembly Bill 414 in 1993. During an initial discussion regarding this bill in the Assembly Committee on Government Affairs, then Labor Commissioner Frank MacDonald proposed the following changes in language: "In addition to assessing against the person the actual amount of the prevailing wage owed, the person may be further assessed an administrative fine that may include any cost incurred by the labor commissioner in investigating and prosecuting the matter and the other penalties as allowed in this chapter."[40] He explained that this language cohered to the intent behind AB 414, which was not to punish but to deter wrongful conduct.[41] As

---

[37]*Gallagher,* 114 Nev. at 599, 959 P.2d at 521.

[38]*Hunt v. Warden,* 111 Nev. 1284, 1285, 903 P.2d 826, 827 (1995).

[39]2001 Nev. Stat., ch. 259, § 10, at 1149.

[40]Hearing on A.B. 414 Before Assembly Government Affairs Comm., 67th Leg., at 7 (Nev., April 9, 1993).

[41]*Id.*

the provision's terms demonstrate, MacDonald's suggestion was substantially adopted by the Legislature. Therefore, we conclude that NRS 338.090(2)(a) should be read to authorize only one assessment equal to the prevailing wage-actual wage differential; NRS 338.090(2)(b) addresses an additional administrative fine. The opposite conclusion would result in penalties more akin to punishment in contravention of the Legislature's intent.

Consequently, we conclude that it was not appropriate for the Labor Commissioner to assess a double fine. Fines under NRS 338.090(2) must be consistent with the costs of investigation and prosecution, and there is no indication that those costs equaled the amount due the claimants in this case. Therefore, City Plan is not required to pay the second $11,946.31 penalty assessed under NRS 338.090, and any fine imposed under that provision upon reassessment should adhere to the provision's terms.

### *CONCLUSION*

We conclude that, with the exception of its argument regarding the improper assessment of penalties under NRS 338.090, City Plan's claims are unpersuasive. Accordingly, we affirm that portion of the district court's order denying judicial review with respect to the payment of prevailing wages and most of the other penalties imposed on City Plan. We reverse that portion of the district court's order with respect to the (second) penalty imposed under NRS 338.090, and we remand this matter to the district court with instructions that it direct the Labor Commissioner to reconsider the appropriate penalty, consistent with this opinion.

GIBBONS and HARDESTY, JJ., concur.