OPINION
 

 Per Curiam:
 

 In this appeal, we address the use of equitable estoppel and waiver principles in administrative workers’ compensation proceedings, as well as the appeals officer’s duty to make factual findings in rendering a determination. We conclude that equitable estoppel and waiver principles may be applied in workers’ compensation proceedings, and therefore, since those principles generally require a factual determination, the appeals officer has authority to and must consider them in the first instance. Further, we reiterate that, in resolving aspects of a contested case, including equitable estoppel or waiver, the appeals officer must support the determination with factual findings.
 

 Fundamentally, this appeal challenges an appeals officer’s decision that denied a workers’ compensation claimant permanent partial disability (PPD) benefits for a cervical spine condition. The appeals officer’s decision was based on two conclusions: first, that the claimant’s failure to administratively challenge the exclusion of her neck condition from her accepted workers’ compensation claim precluded payment for that condition, and second, that the claimant failed to demonstrate that her neck condition was caused by her industrial injury.
 

 In considering the claimant’s argument that her failure to administratively appeal should not preclude PPD benefits for her cervical spine condition because she continued to receive medical benefits for that condition, we conclude that the doctrines of equitable estoppel or waiver apply in workers’ compensation proceedings, and thus, the appeals officer must determine whether those doctrines apply here. Further, with respect to the claimant’s contention that substantial evidence does not support the appeals officer’s refusal to recognize her cervical spine condition as industrial, we are unable to adequately review that issue because the appeals
 
 *462
 
 officer failed to provide the requisite factual findings supporting the determination.
 

 Therefore, we reverse the district court’s order denying judicial review of the appeals officer’s decision and remand this matter so that the appeals officer may address and revisit these issues. Finally, we point out that the appeals officer’s award of any PPD benefits on remand must accord with NRS 616C.490(2)’s rating physician selection requirements.
 

 FACTS AND PROCEDURAL HISTORY
 

 Appellant Mary Beth Dickinson suffered from a nonindustrial right neck and shoulder condition, which included cervical spine and nerve problems, since 1997. In late August 1998, Dickinson sustained an industrial injury to her right upper extremity and filed a claim for workers’ compensation based upon a physician’s diagnoses of causalgia and winging at the right scapula.
 
 [1]
 
 Although that physician also indicated that further diagnostic testing was appropriate, Dickinson’s employer, respondent American Medical Response, accepted her claim for the right arm and shoulder. Dickinson did not administratively challenge the scope of claim acceptance at that time.
 

 Soon after the August 1998 accident, however, Dickinson also reported neck pain. On September 3, 1998, a medical report indicated that Dickinson had a work- or treatment-related worsening of a preexisting cervical disc herniation. A few days later, on September 8, 1998, a physician examined Dickinson’s cervical spine, and in comparing a recent magnetic resonance image (MRI) to one taken previously, in March 1998, he noted significant changes; nevertheless, the physician reported that while the August 1998 industrial injury possibly caused the noted changes, causation was “much more difficult to prove.” Additional testing and physical therapy were recommended.
 

 In the following months, Dickinson was tested for and diagnosed with likely mild brachial plexus injury and possible mild cervical radiculopathy.
 
 [2]
 
 Medication was prescribed and physical therapy was recommended. Apparently, Dickinson underwent physical therapy during the fall and winter of 1998, discontinuing the physical therapy around February 1999.
 

 
 *463
 
 Around that time, Dickinson ostensibly requested that her cervical spine condition be included in her workers’ compensation claim. On March 16, 1999, however, American Medical Response’s third-party administrator denied Dickinson’s request. The administrator’s letter stated that it would not pay for Dickinson’s neck injuries as part of her claim because, in the September 8 medical report, her physician was unable to state, with a reasonable degree of medical probability, that her neck condition was related to the industrial injury. Dickinson did not administratively challenge the March 1999 letter.
 

 In June 1999, Dickinson returned to her physician with complaints of upper right extremity tenderness, and physical therapy was again recommended. As part of the physical therapy that Dickinson underwent over the next several months, Dickinson’s cervical issues were noted and attended to. Meanwhile, a September 30, 1999, neurology report indicated that Dickinson suffered a burning sensation that originated at the right scapula and radiated down her right arm. The diagnosis was “status post possible brachial plexus injury, work-related,’ ’ as well as degenerative disc disease at the cervical spine. Although the neurologist indicated that it was unlikely that the condition shown on the MRIs contributed to Dickinson’s symptoms, he also opined that the 1998 injury had “contributed significantly” to her current problems.
 

 In December 1999, Dickinson’s physician noted that she continued to suffer from neck and shoulder pains, and he recommended that physical therapy be reinstated. Apparently, the administrator authorized a limited number of physical therapy sessions. Thereafter, in March 2000, Dickinson reported to her physician with increased neck and shoulder pain, apparently due to increased work duties. Her physician noted that an MRI showed evidence of cervical radiculopathy and myelopathy,
 
 [3]
 
 and he stated that, although some timing issues existed, the injuries “historically” were related to Dickinson’s work or her work-related injury’s medical treatment.
 

 In June 2000, a neurologist reviewed Dickinson’s extensive medical history and concluded that the industrial accident had resulted in a right wrist, right upper extremity strain, a right arm and shoulder strain injury, and a right brachial traction injury. In addition, he opined that treatment of those injuries had exacerbated Dickinson’s preexisting cervical degenerative disease; radicular symptoms were noted. Despite largely successful treatments, the neurologist stated, Dickinson continued to suffer from surgically addressable spinal stenosis,
 
 [4]
 
 which was caused by her preexisting cervical degenerative disease and complicated by her treatments.
 

 
 *464
 
 During the following months, to treat any cervical radiculopathy, the third-party administrator apparently paid for Dickinson to have several right nerve root block injections. In April 2001, the administrator sent Dickinson for an independent medical examination with Dr. R. W. Patti, who suggested that many of Dickinson’s current complaints were due to her preexisting injuries, that her condition was stable and ratable, and that apportionment was appropriate.
 

 Consequently, the administrator scheduled Dickinson for a PPD evaluation with Dr. Larry J. Tarno for her “cervical injury,” also instructing the rating physician to examine Dickinson’s “right upper extremity, cervical” and to apportion any rating based on preexisting conditions. Dickinson was informed that her medical file would be submitted so that her cervical spine and right upper extremity could be rated. In September 2001, Dr. Tarno indicated that despite Dickinson’s preexisting condition, her cervical spine problems suggested a work-related injury and, in any case, because those problems required more treatment, a PPD rating was inappropriate at that time. Dickinson thus continued to obtain diagnostic treatment and take medications, and she was advised to obtain a surgical opinion.
 

 In December 2002, an administrative status report indicated that the administrator was awaiting an opinion from another physician regarding whether the cervical spine should be accepted as part of the industrial injury claim. A few days later, that physician listed as industrial, among other things, right cervical and shoulder strains, chronic complaints of neck pain, right shoulder pain, and numbness in her right fingers, right brachial plexus involvement with mild radiculopathy, and preexisting degenerative disc disease, indicating that Dickinson’s disc herniation seemed to have improved and that no neural compromise was evident. As for nonindustrial conditions, he contradictorily listed chronic complaints of neck pain, right shoulder pain, and numbness in the right fingers.
 

 In February 2003, the administrator scheduled Dickinson for another PPD evaluation of her right shoulder/cervical strain injury, this time with Dr. Maureen E. Mackey. Dickinson failed to appear for her evaluation, and therefore, her claim was closed. She administratively appealed.
 

 While Dickinson’s administrative appeal was pending, in December 2003, Dickinson attended a PPD evaluation with the originally scheduled physician, Dr. Mackey. The resulting PPD report connected her condition to a work-related worsening of her preexisting condition, diagnosing bilateral cervical radiculopathy and multilevel cervical herniated discs, as well as right shoulder strain. A 27-percent PPD rating was given, on a total body basis, based on 2-percent impairment to the right shoulder and 25-percent impairment to the cervical spine.
 

 
 *465
 
 The appeals officer, however, determined that the December 2003 PPD evaluation was unauthorized and sent Dickinson for a third PPD evaluation, which was conducted by Dr. Tarno. The appeals officer asked Dr. Tarno to opine on the claim’s scope and whether apportionment was appropriate. On May 12, 2004, Dr. Tarno rated Dickinson with 16-percent whole-person impairment— 1-percent impairment of the right shoulder and 15-percent impairment of the cervical spine. He opined that the industrial injury was wholly responsible for the findings and current impairments. On April 27, 2005, pursuant to the appeals officer’s interim order, Dr. Tarno again examined Dickinson; this time, he rated her with a 17-percent whole person impairment — 2-percent impairment of the right shoulder and 15-percent impairment of the cervical spine, which he connected to the industrial injury.
 

 Finally, the administrator asked a third rating physician, Dr. Richard Kudrewicz, to review Dr. Tarno’s evaluation. Dr. Kudrewicz, disagreeing somewhat with Dr. Tarno’s methodology, indicated that a 4-percent whole-person impairment rating would be appropriate for the injury to Dickinson’s right shoulder, if Dickinson’s cervical condition was excluded. With respect to her cervical condition, he noted that her injury’s history was confusing and concluded that, if Dickinson did have bilateral radiculopathy, then Dr. Tarno was ultimately correct in his 15-percent impairment rating for Dickinson’s cervical condition.
 

 After reviewing these reports, the appeals officer reversed in part the hearing officer’s decision, determining that Dickinson’s claim should be closed with a 4-percent PPD award based on Dr. Kudrewicz’s report. Specifically, the appeals officer determined that no PPD award with respect to the cervical spine was permitted because Dickinson had failed to administratively challenge both the claim acceptance letter and the March 1999 letter denying her request to include her neck condition as part of her claim. Nevertheless, the appeals officer went on to conclude that Dickinson had failed to meet her burden to show, by the preponderance of the evidence, that her claim should be expanded beyond the right shoulder. Dickinson petitioned for judicial review, which the district court denied, and Dickinson then appealed.
 

 DISCUSSION
 

 This court, like the district court, reviews an appeals officer’s decision for clear error or abuse of discretion.
 
 [5]
 
 Although we independently review an appeals officer’s purely legal determinations, the appeals officer’s fact-based legal conclusions are entitled to deference and will not be disturbed if they are supported by sub
 
 *466
 
 stantial evidence.
 
 [6]
 
 Substantial evidence is evidence that a reasonable person could accept as adequately supporting a conclusion.
 
 [7]
 
 We may not substitute our judgment for that of the appeals officer as to credibility determinations or the weight of the evidence on a question of fact.
 
 [8]
 
 Our review is limited to the record before the appeals officer.
 
 [9]
 

 On appeal, Dickinson argues that the appeals officer erroneously concluded that she waived her right to any PPD award based on her cervical spine condition by failing to challenge the claim acceptance and March 1999 letters because, despite the letters, the administrator continued to pay accident benefits related to that condition, and thus, she was not “aggrieved” by the administrator’s letters. She also argues that the appeals officer’s determination with respect to limiting the scope of her claim is not supported by substantial evidence and that the appeals officer improperly failed to rely solely on authorized rating physicians’ evaluations in awarding PPD benefits.
 

 Dickinson did not necessarily waive her right to cervical PPD benefits
 

 Under NRS 616C.315(3), any person who is aggrieved by an administrator’s written determination has 70 days within which to administratively appeal that determination. In
 
 Reno Sparks Visitors Authority
 
 v. Jackson,
 
 [10]
 
 we recognized that the 70-day time frame was jurisdictional and mandatory and that, subject to narrow exceptions that do not apply here, the failure to timely file an administrative appeal operates as a final decision on the matter, which cannot be relitigated.
 
 [11]
 

 Dickinson, however, asserts that she could not have administratively appealed because she was not aggrieved by the administrator’s letters, since the administrator continued to allow her to treat for her neck condition. But Dickinson’s argument is not truly about aggrievement — clearly, Dickinson was “aggrieved” by the letters to the extent that they purported to exclude a known industrial condition or denied her request to cover her cervical spine
 
 *467
 
 condition.
 
 [12]
 
 Rather, Dickinson is in essence asserting that American Medical Response is estopped from arguing, or has waived any argument, that she was not entitled to PPD benefits for her cervical condition because its administrator acted in a manner inconsistent with the information set forth in the letters.
 
 [13]
 

 Equitable estoppel may be invoked against a party who claims a statutory right in administrative workers’ compensation proceedings, when the invoking party has reasonably relied on the other party’s words or conduct to her detriment.
 
 [14]
 
 Implied waiver applies in those types of proceedings when the other party’s conduct clearly shows an intention to waive a right or when that party’s neglect to insist upon the right prejudices the invoking party.
 
 [15]
 

 
 *468
 
 Here, Dickinson asserts that she did not administratively challenge the administrator’s letters declining to include her cervical spine condition within the scope of her workers’ compensation claim because the administrator, contrary to the language of its letters, had paid for and continued to pay for her cervical treatment. She also contends that the administrator’s post-March 1999 conduct in paying for the cervical treatments and in scheduling PPD evaluations of her neck in this matter constituted acceptance of her cervical condition as part of her industrial claim. Whether estoppel or waiver principles apply under these circumstances requires a factual determination,
 
 [16]
 
 however, and therefore, this matter must be resolved by the appeals officer in the first instance.
 

 The appeals officer improperly failed to provide explicit factual findings
 

 With respect to the appeals officer’s alternative determination that Dickinson failed to show, by a preponderance of the evidence, that her industrial claim should not be limited to the right shoulder, but instead should include her cervical spine condition, the appeals officer erroneously failed to make any findings regarding this conclusion.
 

 Workers’ compensation benefits are available to a claimant who shows, by a preponderance of the evidence, that her medical condition is industrial, in that it arose out of and in the course of employment.
 
 [17]
 
 Further, the resulting condition of an employee whose industrial injury aggravates, precipitates, or accelerates a preexisting, nonindustrial condition is deemed industrial, unless the insurer demonstrates that the industrial injury is not a “substantial contributing cause” of the claimant’s resulting condition.
 
 [18]
 
 The insurer must accept a newly developed industrial condition even after the workers’ compensation claim has been filed.
 
 [19]
 

 
 *469
 
 Here, the record contains several medical reports indicating that, at least to some extent, Dickinson’s current cervical condition was caused or substantially contributed to by the August 1998 injury.
 
 [20]
 
 While, as the appeals officer noted, some reports appear to dispute the extent to which Dickinson’s current condition should be deemed industrial, the appeals officer made no other factual findings with respect to the industrial or nonindustrial nature of Dickinson’s current cervical condition. Nor did the appeals officer indicate the statutory bases for her determination that Dickinson failed to meet her evidentiary burden. Accordingly, we are unable to adequately review this issue.
 

 As set forth in Nevada’s Administrative Procedure Act at NRS 233B.125, the appeals officer’s final decision must include findings of fact and conclusions of law, separately stated. The factual findings must be based upon substantial evidence and, if rendered in statutory language, supported by a “concise and explicit statement of the underlying facts supporting the findings.”
 
 [21]
 
 This requirement, we have recognized, is crucial to the administrative process, as factual findings not only help ensure that the administrative agency engages in reasoned decision making, but they also facilitate judicial review.
 
 [22]
 
 Through factual findings, the parties may make a fully informed decision as to whether to seek judicial review in the first place, and upon seeking such review, the courts are enabled to evaluate the administrative decision without intruding on the agency’s fact-finding function.
 
 [23]
 
 This is particularly important in a case like this, where the record contains several medical reports, not addressed by the appeals officer, that appear to conflict with the appeals officer’s conclusion.
 

 Accordingly, as the appeals officer’s order summarily states only that the preponderance of the evidence supports limiting the claim to the right shoulder (even though it was also accepted for the right arm), without further legal and factual explanation, we cannot adequately review the appeals officer’s alternate determination. Consequently, we necessarily reverse the district court’s order and remand this matter for further proceedings. If, on remand, the appeals officer determines that Dickinson may seek
 
 *470
 
 PPD benefits for her cervical condition, the appeals officer must then ascertain whether Dickinson has met her statutory burden to show that she is entitled to those benefits because her cervical condition is industrial. In so doing, the appeals officer should comply with NRS 233B.125’s requirement by explicitly stating the facts supporting the determination.
 

 On remand, NRS 616C. 490(2) must be followed
 

 Finally, we take this opportunity to address one last issue. In her reply brief, Dickinson asserts that the appeals officer had no authority to determine whether her cervical spine condition should be accepted as part of her workers’ compensation claim. The premises underlying this assertion are as follows. Dickinson’s administrative appeal challenged the administrator’s decision to close her claim based on her failure to appear for her PPD evaluation; therefore, the only issue before the appeals officer was whether her failure to appear warranted claim closure, not whether her cervical condition was part of her claim. Thus, once the appeals officer determined that Dickinson’s failure to appear did not warrant claim closure without a PPD evaluation, she was automatically entitled to a PPD award based on the statutorily authorized PPD physicians’ rating, which included her cervical condition, because the administrator had allowed her to treat her cervical condition under the claim and scheduled PPD evaluations for that condition.
 

 Although we need not address this assertion because Dickinson first fully articulated it in her reply brief,
 
 [24]
 
 we note that Dickinson specifically asked the appeals officer to award her PPD benefits based on a rating that included her cervical condition. Therefore, whether Dickinson was entitled to PPD benefits for that cervical condition was necessarily raised, and addressed by the appeals officer, once it was suggested that Dickinson was entitled to PPD benefits despite failing to appear at the scheduled evaluation.
 
 [25]
 

 Nonetheless, in determining PPD benefits, the rating physician selection process set forth in NRS 616C.490(2) must be followed.
 
 [26]
 
 
 *471
 
 Here, the appeals officer relied on the record review completed by the third rating physician, Dr. Kudrewicz, even though Dr. Kudrewicz apparently was not selected according to statute. While we do not suggest that the appeals officer may never rely on an outside rating physician’s record review,
 
 [27]
 
 nothing in the record here provides a basis for proceeding outside the statutory process. Further, we point out that Dr. Kudrewicz’s report ostensibly conflicts with the properly selected rating physicians’ reports regarding the percentage of cervical permanent disability. While we will not reweigh the evidence regarding a question of fact or whether a burden was met, we note the apparent inconsistency between the appeals officer’s decision to assign “little weight” to the first, properly selected rating physician’s report ostensibly merely because the physician’s late evaluation was not authorized by the administrator, and the appeals officer’s decision to rely on Dr. Kudrewicz’s apparently statutorily unauthorized report. Any PPD award on remand should accord with NRS 616C.490(2)’s requirements.
 

 CONCLUSION
 

 Although Dickinson did not administratively appeal the administrator’s letters excluding her cervical spine condition from her workers’ compensation claim, the appeals officer must determine whether the doctrines of equitable estoppel and waiver apply to bar American Medical Response from asserting that Dickinson’s failure to appeal precludes relief or from denying the industrial nature of that condition. Further, with respect to the appeals officer’s alternative conclusion that Dickinson’s cervical condition should not be included in her claim, the appeals officer’s failure to make explicit factual findings supporting that conclusion prevents adequate review. Accordingly, we reverse the district court’s order and remand this matter with instructions to the district court to remand this matter to the appeals officer for further proceedings consistent with this opinion. The appeals officer’s decision on remand should comply with NRS 233B.125 and NRS 616C.490(2).
 

 [1]
 

 According to J.E. Schmidt, M.D., 1 & 6
 
 Attorneys’ Dictionary of Medicine,
 
 C-119 & W-32 (1999), “causalgia” is “[a] burning sensation or pain, especially in the palms and soles, caused by injury to the nerves which carry impulses from these parts,” and “winged scapula” is “[a]n abnormal condition in which the scapula (shoulder blade), especially its medial border, extends away from the back of the chest wall.”
 

 [2]
 

 The “brachial plexus” is “[a] large and important nerve structure situated partly in the neck and partly in the armpit,” and “radiculopathy” is generally defined as “[a]ny disease of the roots of spinal nerves.” J.E. Schmidt, M.D., 1 & 5
 
 Attorneys’ Dictionary of Medicine,
 
 B-174 & R-10.
 

 [3]
 

 “Myelopathy” denotes “[a]ny disease of the spinal cord.” J.E. Schmidt, M.D., 4
 
 Attorneys’ Dictionary of Medicine,
 
 M-315.
 

 [4]
 

 Spinal “stenosis” refers to an abnormal narrowing of the spinal canal.
 
 See
 
 J.E. Schmidt, M.D., 5
 
 Attorneys’ Dictionary of Medicine,
 
 S-292.
 

 [5]
 

 Construction Indus,
 
 v.
 
 Chalue,
 
 119 Nev. 348, 352, 74 P.3d 595, 597 (2003).
 

 [6]
 

 Ayala
 
 v.
 
 Caesars Palace,
 
 119 Nev. 232, 235, 71 P.3d 490, 491 (2003).
 

 [7]
 

 Id.
 
 at 235, 71 P.3d at 491-92.
 

 [8]
 

 Grover C. Dils Med. Ctr. v. Menditto,
 
 121 Nev. 278, 283-84, 112 P.3d 1093, 1097 (2005).
 

 [9]
 

 Id.
 
 at 284, 112 P.3d at 1097.
 

 [10]
 

 112 Nev. 62, 65-66, 910 P.2d 267, 269-70 (1996).
 

 [11]
 

 See also Browning v. Young Elec. Sign Co.,
 
 113 Nev. 420, 424, 936 P.2d 322, 325 (1997).
 

 [12]
 

 Cf. Valley Bank of Nevada
 
 v.
 
 Ginsburg,
 
 110 Nev. 440, 446, 874 P.2d 729, 734 (1994) (explaining that a party is “aggrieved” for the puqjose of appealing a district court’s decision to this court under NRAP 3A(a) when the order substantially affects a personal or property right).
 

 The record reveals that after the administrator declined to accept Dickinson’s cervical spine condition based on the September 8 medical report, which contemplated the possibility that the cervical condition was industrial, several physicians rendered additional cervical diagnoses and connected those diagnoses to her industrial injury or the treatment of that injury. We make no determination regarding whether Dickinson’s failure to administratively challenge the administrator’s letter necessarily barred her from later seeking to include her cervical condition in her workers’ compensation claim based on the additional medical reporting.
 

 [13]
 

 See
 
 NRS 616B.324 (explaining that a self-insured employer’s administrator is the employer’s agent).
 

 [14]
 

 See Schmidt
 
 v.
 
 Beeson Plumbing and Heating,
 
 869 P.2d 1170, 1175, 1175 n.7 (Alaska 1994);
 
 Barrington
 
 v.
 
 Employment Sec. Com’n,
 
 286 S.E.2d 576, 578 (N.C. Ct. App. 1982) (“It is well established that the doctrine of equitable estoppel may be applied in workers’ compensation cases.”);
 
 Appleby v. Workers’ Safety & Comp. Div.,
 
 47 P.3d 613, 619 (Wyo. 2002) (explaining that substantive legal issues like equitable estoppel may be determined by an administrative agency as part of a contested workers’ compensation case and has been applied to prevent strict application of statutory limitations periods);
 
 see generally Lentz
 
 v.
 
 McMahon, 777
 
 P.2d 83, 88-91 (Cal. 1989) (recognizing that administrative agencies routinely apply equitable estoppel in administrative hearings and that permitting them to do so is consistent with administrative remedy exhaustion requirements and separation of powers);
 
 Matter of Harrison Living Trust,
 
 121 Nev. 217, 223, 112 P.3d 1058, 1061-62 (2005) (explaining the doctrine of equitable estoppel).
 

 [15]
 

 See Schmidt,
 
 869 P.2d at 1175, 1175 n.7;
 
 see also Hudson v. Horseshoe Club Operating Co.,
 
 112 Nev. 446, 457, 916 P.2d 786, 792 (1996) (explaining that “[w]aiver occurs where a party knows of an existing right and either actually intends to relinquish the right or exhibits conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished”).
 

 [16]
 

 See Harrison Living Trust,
 
 121 Nev. at 222, 112 P.3d at 1061;
 
 Schmidt,
 
 869 P.2d at 1175 (noting that the Alaska court “will uphold a Board decision as to whether to apply equitable principles if it is supported by substantial evidence”).
 

 Although the appeals officer noted that Dickinson’s cervical spine was “subject to differential and rule out diagnostic enquiry or treated incidental to the industrial residuals, [but was] never [an] accepted body part[ ],” the record contains no indication that the medical evaluations and treatment were so limited. Accordingly, while treating a nonaccepted condition for the noted reasons is not necessarily improper, it nonetheless appears that Dickinson might have reasonably relied on the administrator’s conduct as indicative of acceptance, invoking principles of equity.
 

 [17]
 

 NRS 616C. 150(1).
 

 [18]
 

 NRS 6160.175(1).
 

 [19]
 

 NRS 616C.160.
 

 [20]
 

 See Imperial Palace v. Dawson,
 
 102 Nev. 88, 90-91, 715 P.2d 1318, 1320 (1986) (recognizing that a workers’ compensation insurer is responsible for covering any injury caused by the treatment of an industrial injury).
 

 [21]
 

 NRS 233B.125.
 

 [22]
 

 State,
 
 Bd. Psychological Exmr’s. v. Norman,
 
 100 Nev. 241, 244, 679 P.2d 1263, 1265 (1984).
 

 [23]
 

 Id.;
 
 see also PSC
 
 v.
 
 Continental Tel. Co.,
 
 94 Nev. 345, 350, 580 P.2d 467, 470 (1978) (presuming that an administrative agency’s order was unreasonable because it offered “no explanation” with respect to a certain determination and thus did not comply with NRS 233B.125’s requirement to make findings of fact and conclusions of law to support particular findings).
 

 [24]
 

 See Edwards v. Emperor’s Garden Rest.,
 
 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that appellants bear the responsibility to present cogent arguments and relevant authority in support of their appellate concerns);
 
 Weaver v. State, Dep’t of Motor Vehicles,
 
 121 Nev. 494, 502, 117 P.3d 193, 198-99 (2005) (pointing out that this court need not consider arguments raised for the first time in the reply brief).
 

 [25]
 

 See
 
 NRS 616C.360(2) (providing that the appeals officer must consider any matter raised on its merits);
 
 Diaz
 
 v.
 
 Golden Nugget,
 
 103 Nev. 152, 155, 734 P.2d 720, 723 (1987) (“[T]he hearing before the appeals officer is more akin to a hearing
 
 de novo
 
 than to an appeal.”).
 

 [26]
 

 See Georgeff v. Sahara Hotel,
 
 103 Nev. 485, 489, 745 P.2d 1142, 1145 (1987) (applying former version of statute); NRS 616C.360(3)(a);
 
 see also
 
 NRS 616C. 100(1) (allowing
 
 the claimant
 
 to obtain a second PPD determination, from an NRS 616C.490(2)-selected rating physician, based on which compensation may be ordered).
 

 [27]
 

 See, e.g., Georgeff,
 
 103 Nev. 485, 745 P.2d 1142.