# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RAND PROPERTIES, LLC; JOHN CARRINGTON; TAMI CARRINGTON; AND JOHN E. CARRINGTON AND VIRGINIA G. CARRINGTON DECLARATION OF TRUST DATED FEBRUARY 19, 2003, Appellants, vs. DANIEL FILIPPINI; EDDYANN FILIPPINI; AND JULIAN TOMERA RANCHES, INC., BATTLE MOUNTAIN DIVISION, Respondents. | No. 66933 <br><br> **FILED** <br><br> APR 2 1 2016 <br><br> TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ DEPUTY CLERK |

## ORDER OF REVERSAL AND REMAND

This is an appeal from a district court decree, an order regarding administration of the decree, and an order granting attorney fees and costs in a water rights action. Sixth Judicial District Court, Lander County; Richard Wagner, Judge.

## BACKGROUND

Respondents Daniel and Eddyann Filippini (collectively Filippini) filed a complaint against Julian Tomera Ranches, Inc., Battle Mountain Division (Tomera), and Rand Properties, LLC (Rand) on June 7, 2011 to adjudicate conflicting claims to stock and irrigation water rights near Trout Creek. On March 6, 2012, Filippini's counsel mailed to property owners near Trout Creek notice that water rights were subject to final adjudication. After receiving notice, John Carrington; Tami Carrington; and John E. Carrington and Virginia G. Carrington Declaration of Trust joined the action. All parties stipulated to the

16-12552

Carrington parties' dismissal after determining that the Carrington parties' water rights were not in dispute. The action proceeded to adjudication on April 8, 2013, wherein the district court established priority dates for each of the remaining parties' stock and irrigation water rights. The district court later issued an order awarding attorney fees pursuant to NRS 533.190(1) and NRS 533.240(3), which required all parties, including the previously dismissed Carrington parties, to share the expense. Rand and the Carrington parties now appeal.

## DISCUSSION

On appeal, this court reviews de novo a district court's legal conclusions. *Keife v. Logan*, 119 Nev. 372, 374, 75 P.3d 357, 359 (2003). However, we "will not disturb a district court's findings of fact if they are supported by substantial evidence." *Id.* "[E]vidence that a reasonable mind might accept as adequate to support a conclusion" is substantial evidence. *Winchell v. Schiff*, 124 Nev. 938, 944, 193 P.3d 946, 950 (2008) (internal quotation omitted).

*Irrigation water rights*

*Rand's priority date (claim V02678)*

The district court rejected Rand's claim of a vested irrigation water right beginning in 1869, after concluding that the first diversion of water to Rand's Trout Creek Ranch was in 1901 by Walter Dobbs:

> The credible evidence shows that the first diversion of water onto the Trout Creek Ranch was in 1901 by Dobbs. This court finds that Rand has only established a vested water right for 52.5 acres of irrigation; there was no actual diversion and application of Trout Creek water at Rand's Trout Creek Ranch until 1901. Rand has not established an earlier right by a preponderance of evidence. Rand claims that Dobbs' use at Trout

Creek Ranch in 1901 relates back to an earlier appropriation by Roth, Pankey, Blossom or Hoffman; however, there is no evidence that the use at Rand's Trout Creek Ranch was pursued with reasonable diligence from 1869 (Roth) or 1871 (McBeth).

. . . .

While there is statutory authority that may allow one to change the place or manner of use of a water right, there is no authority that would allow one, prior to the enactment of statutory water law, to change the place of use without creating a new appropriation, and in turn, a new priority date. Claim V02678 has been established for irrigation of 52.5 acres on Trout Creek Ranch with a priority date of 1901.

On appeal, Rand argues that the district court erred as a matter of law in determining its priority date because a change in the place of use of a water right does not disrupt the chain of title. Filippini argues that the dispositive question on appeal is whether Rand is able to establish a chain of title from 1869; Filippini claims that Rand cannot.

We conclude that the district court erred by relying on an erroneous conclusion of law to establish Rand's priority date. In particular, the district court concluded that changing the place of use of water creates a new appropriation, and in turn a new priority date. As Rand argues, "[t]he right to water acquired by prior appropriation is not dependent upon the place where the water is used. A party having obtained the prior right to the use of a given quantity of water, is not restricted . . . to the use or place to which it was first applied." *Union Mill & Mining Co. v. Dangberg*, 81 F. 73, 115 (C.C.D. Nev. 1897). So long as the rights of others are not affected, a person entitled to a given quantity of water from a stream may take it at any point of the stream, and may

change the character of its use at will. *Id.* (citing *Hobart v. Wicks*, 15 Nev. 418, 421 (1880)). Thus, so long as Rand has not appropriated more than the quantity of water to which he is entitled, his priority date need not be reset.

Despite the district court's erroneous legal conclusion, Filippini argues that there is substantial evidence in the record demonstrating that Rand cannot link itself by chain of title to 1869. Filippini references expert testimony to support its argument. However, we conclude, notwithstanding the expert evidence presented, that the district court did not make findings as to ownership links in the chain of title; rather, it concluded that it could not establish a chain of title due to the change in the place or manner of use.[1] We further conclude that the district court's findings as to ownership in the chain of title are insufficient for this court to properly review the matter. *See Dickinson v. Am. Med. Response*, 124 Nev. 460, 471, 186 P.3d 878, 885 (2008) (concluding that failure to make explicit factual findings prevented this court's review). Accordingly, we vacate and remand this issue for further proceedings regarding Rand's connection to the chain of title.

*Filippini's priority date (claim V01563)*

The district court determined that "Filippini is entitled, through [James] Hughes, to 100 acres of irrigation on the Badger Ranch with an 1871 priority." On appeal, Rand argues that the district court's decree did not explain how Hughes was connected by title to Filippini, and

---

[1]The extent to which the district court relied on its limited finding that there was no proof of beneficial use to reach its ultimate finding of a 1901 priority date is unclear.

that there is no evidence showing any conveyance between 1891 and 1897. Filippini contends that his expert testified to the existence of tax records that establish the chain of title from 1891 through 1897. We conclude that the district court's ruling, which specifies neither the intermediate ownership linking Hughes and Filippini, nor the evidence relied upon to reach its determination, is insufficient for this court to review the matter. *See id.* Thus, we also vacate and remand for further proceedings on this issue.

*Stock water rights*

The district court found "that cattle of the J.R. Bradley outfit drank and diverted water from Trout Creek as early as 1862, thereby setting a domestic stock water priority date of 1862 for all three parties." On appeal, Rand contends there is no evidence supporting the district court's finding of an 1862 stock water priority date for any party because vested stock water rights, like all water rights, require an appropriator to prove a valid chain of title. Conversely, Filippini argues that proof of a chain of title is not required when seeking stock water rights in public land owned by the United States, as each of the parties to this case holds federal permits to graze on allotments within the Battle Mountain District. We disagree.

In Nevada, stock water rights on public domains are passed by chain of title. *See Steptoe Live Stock Co. v. Gulley*, 53 Nev. 163, 169-176, 295 P. 772, 773-776 (1931) (determining that plaintiff and its predecessors in interest for the past forty years had the exclusive right to stock water for 500 livestock on a public range). But Filippini and Tomera argue that, under the Taylor Grazing Act, 43 U.S.C. § 315, which granted grazing allotments on the same federal land where J.R. Bradley grazed cattle,

SUPREME COURT
OF
NEVADA

(O) 1947A

each of the parties owns permits to graze cattle and horses, settling the parties' rights. Where there is a conflict between federal and state law, federal law prevails under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2. Thus, the instant question is whether a conflict exists between federal grazing law and Nevada's water law, providing that stock water rights pass by chain of title on public land.

We conclude that Nevada law and federal law do not conflict. First, the Act, implemented in 1934, specifies that it does not invalidate any existing rights. 43 U.S.C. § 315. Second, the federal law concerns grazing rights, and although closely related to water rights, they are, even within the Act, considered separate issues. *See* 43 U.S.C. § 315b.

Because state and federal law do not conflict, the stock water rights passed by chain of title properly reflect the party's current rights to the disputed stock water. However, as stated, the district court's findings as to chain of title preclude this court's review. *Dickinson*, 124 Nev. at 471, 186 P.3d at 885. Therefore, we also vacate and remand this issue.

*Certificate 12160 (permit 39377) and easement*

In 1979, Leroy Horn possessed grazing preferences for 600 cattle on the Argenta Grazing Allotment. He secured certificate 12160 (permit 39377), and built the Trout Creek pipeline to water his cattle. In 1989, Horn, Tomera, and Filippini entered into a three-way contract of sale wherein Horn agreed to sell his grazing preferences to Tomera, but sold the Badger Ranch to Filippini. The contract specified that it included federal grazing privileges and "all waters, water rights, rights to the use of water, dams, ditches, canals, pipelines, reservoirs and all other means for the diversion or use of waters appurtenant to the said property or any part thereof, or used or enjoyed in connection therewith, and together with all

stockwatering rights used or enjoyed in connection with the use of any of said lands." Tomera does not dispute Rand's assertion that Tomera did not record its rights under the contract.

In 2009, Rand purchased Trout Creek Ranch from Jack and Loretta Broughton. Among other conveyances, the deed purported to convey certificate 12160. In 2010, Rand cut off the flow of water to the Trout Creek pipeline, and prohibited Tomera's access to the diversion structure.

Consequently, Tomera filed a cross claim in the district court arguing that it owned stock water certificate 12160, and an easement or irrevocable license on Rand's property to access the pipeline. The district court concluded that Rand could not own certificate 12160 because it did not possess a grazing preference for 600 cattle at the place of use, and therefore could not put the water to beneficial use. The district court explained that the purpose of NRS 533.503 "is to ensure that stockwater rights follow the livestock that are lawfully permitted to use stockwater on the public range." With regard to the easement, the district court concluded that "Tomera is entitled to an easement by necessity for the access, operation, maintenance, repair, and use of the Trout Creek pipeline and its point of diversion that lie across Rand's private property . . . ."

On appeal, Rand argues that pursuant to NRS 533.382's requirement that water rights be conveyed by deed, Tomera cannot be the proper owner of certificate 12160, and that it is a bona fide purchaser nonetheless. Tomera argues that it is the rightful owner of certificate 12160, that NRS 533.503 prohibits Rand from holding the certificate because he does not own livestock, and that Rand's bona fide purchaser

defense is not properly before this court because Rand did not assert it in the district court.

We conclude that the district court erred in determining that NRS 533.503 prohibited conveyance of certificate 12160 to Rand. NRS 533.503(2)(b) provides that the State Engineer shall not issue a stock water appropriation certificate unless: "The forage serving the beneficial use of the water that has been beneficially used is not encumbered by an adjudicated grazing preference recognized pursuant to law for the benefit of a person other than the holder of the permit." Although the statute prevents issuance of a certificate from the State Engineer, it does not prohibit conveyance of a certificate by a private party. Here, the Broughtons purported to convey certificate 12160 to Rand. Thus, NRS 533.503 does not apply.

Further, Rand's argument that Tomera does not properly hold certificate 12160 pursuant to NRS 533.382's requirement that water rights be conveyed by deed lacks merit. Tomera purchased certificate 12160 from Horn in 1989. The requirement that conveyances of water rights be made by deed was not added to NRS Chapter 533 until 1995. 1995 Nev. Stat., ch. 265, §§ 1,3, at 434. Thus, at the time of Tomera's purchase, Tomera was not required by statute to obtain title by deed.

However, Rand also argues that it is a bona fide purchaser.[2] "In order to be entitled to the status of a bona fide purchaser without

_____

[2]Rand raised its bona fide purchaser defense at a hearing on May 30, 2013. Thus, the bona fide purchaser issue is properly before this court. *See Arnold v. Kip*, 123 Nev. 410, 416, 168 P.3d 1050, 1054 (2007) (noting that even arguments not raised in the district court until a motion for reconsideration may be properly before this court).

notice . . . [Rand] was required to show that legal title had been transferred to [him] before [he] had notice of the prior conveyance to [Tomera]." *See Berge v. Fredericks*, 95 Nev. 183, 188, 591 P.2d 246, 248 (1979). Unfortunately, this court cannot properly review Rand's bona fide purchaser defense because the district court did not make findings regarding whether Rand had notice. *See Dickinson*, 124 Nev. at 471, 186 P.3d at 885. Thus, we vacate and remand the district court's rulings concluding that Tomera owns certificate 12160 and an easement for further proceedings on whether Rand had notice of the conveyance to Tomera.

*Attorney fees*

The district court ruled that pursuant to NRS 533.190(1) and NRS 533.240(3), each party to the adjudication must share in the: 1) costs and fees associated with notice and service; 2) costs and fees associated with preparation of the general and administrative provisions; and 3) costs associated with preparation of the hydrographic survey. For the costs associated with service, the district court ordered that Tomera, Rand, Filippini, and the Carrington parties split the cost equally. As to preparation of the general and administrative provisions, the district court ordered Rand and Tomera to share the cost. With regard to the cost of the hydrographic survey, the district court ordered that they be shared equally among the parties. The district court explained that the claim adjudicated relative rights, and that each of the parties benefited from the action.

The Carrington parties and Rand argue that the district court abused its discretion by awarding attorney fees pursuant to NRS 533.190(1) and NRS 533.240(3) because neither statute provides for an

award of attorney fees. Filippini argues that, pursuant to NRCP 71, an order may be enforced against the Carrington parties although they were dismissed from the adjudication.

We generally review a district court's decision regarding "costs and attorney fees for an abuse of discretion." *Gunderson v. D.R. Horton, Inc.*, 130 Nev., Adv. Op. 9, 319 P.3d 606, 615 (2014). Under Nevada law, "the district court may not award attorney fees absent authority under a statute, rule, or contract." *Albios v. Horizon Cmtys., Inc.*, 122 Nev. 409, 417, 132 P.3d 1022, 1028 (2006). Here, the district court concluded that NRS 533.190(1) and NRS 533.240(3) permitted an award of attorney fees to Filippini's counsel for service of Trout Creek property owners and preparation of the general and administrative provisions.

NRS 533.190(1) provides:

> At any time in the course of the hearings, the court may, in its discretion, by order assess and adjudge against any party such costs as it deems just and equitable or may so assess the costs in proportion to the amount of water right standing allotted at that time, or the court may assess and adjudge such costs and expenses in its final judgment upon the signing, entry and filing of its formal findings of fact, conclusions of law and decree adjudicating the water rights against any party as it deems just and equitable, or may so assess the costs in proportion to the amount of water right allotted and decreed in the final judgment.

NRS 533.240(3) provides:

> The cost of the suit, including the costs on behalf of the State and of the surveys, shall be charged against each of the private parties thereto based on a determination by the court of the relative merits of the claims made by each of the private parties. The court may assess and charge against

SUPREME COURT
OF
NEVADA

(O) 1947A

10

any party at any time during the suit an equitable amount to pay the costs of the survey upon its approval of an itemized statement therefor submitted by the State Engineer.

These statutes specifically provide for an award of costs, but under Nevada law, attorney fees are not considered costs. *See Smith v. Crown Fin. Services of Am.*, 111 Nev. 277, 287, 890 P.2d 769, 776 (1995) ("Although we affirm the award of costs, we must remand the case because the district court did not segregate the amount awarded as costs from the amount awarded as attorney fees."). Moreover, attorney fees are not mentioned anywhere in the statute. Therefore, the district court's award to Filippini's counsel of attorney fees, intermingled with costs, cannot be sustained under NRS 533.190(1) or NRS 533.240(3). Accordingly, we reverse the award of attorney fees.

Based on the foregoing, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____ , J.
Douglas

_____ , J.
Cherry

_____ , J.
Gibbons

cc:   Hon. Richard Wagner, District Judge
Marvel & Kump, Ltd.
Parsons Behle & Latimer/Reno
Fallon City Attorney's Office
Schroeder Law Offices, P.C.
Gerber Law Offices, LLP
Lander County Clerk